IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LINDA D. WILSON,**

  **Plaintiff,**

**vs.**                      **No.  02cv0549  DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

  **Defendant.**

## MEMORANDUM OPINION AND ORDER

  This matter is before the Court on Plaintiff's (Wilson's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 10]**, filed July 16, 2003, and fully briefed on October 9, 2003.  The Commissioner of Social Security issued a final decision denying Wilson's claim for disability insurance benefits and supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

  Wilson, now forty-four years old, filed her application for disability insurance benefits and supplemental security income benefits on August 24, 1998, alleging disability since March 1, 1998, due to diabetes, high blood pressure, hepatitis C, depression, and asthma. Tr. 14.  Wilson has a high school education and one year of vocational training as a nurse.  Wilson's  past relevant work consists of dog groomer and health care aide.  On July 26, 2000, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Wilson "had a 'severe' combination

of physical and mental impairments relative to obesity, diabetes mellitus, hypertension, asthma, hiatal hernia, hepatitis C, affective disorder, borderline personality disorder and cocaine dependence from the date of onset through her cessation of cocaine dependence on or about August 31, 1999." Tr. 15. The ALJ also found Wilson's "cocaine dependence [met] the requirements of Listing 12.09 of the Listing of Impairments . . . since the alleged onset date through August 31, 1999." *Id.* Moreover, the ALJ found Wilson's mental impairments were not severe after she "ceased cocaine dependence on or about August 31, 1999." *Id.* The ALJ further found Wilson retained the residual functional capacity (RFC) for a "full range of light exertional level, unskilled work when considering only her non-DAA physical and mental impairments." Tr. 25. As to her credibility, the ALJ found her allegations regarding her limitations were not totally credible. Tr. 24-25. On March 15, 2002, the Appeals Council denied Wilson's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Wilson seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Wilson makes the following arguments: (1) The ALJ improperly weighed the opinion of the consultative physician; (2) the ALJ gave improper weight to the licensed professional counselor; (3) the ALJ failed to consult a vocational expert; and (4) the ALJ erred in finding her cocaine dependence was a contributing factor material to his determination regarding disability.

**A.  Dr. Sabita Sengupta's October 28, 1998 Medical Report**

Wilson contends the ALJ improperly weighed the opinion of Sabita Sengupta, M.D., the agency's consultative physician.  Dr. Sengupta examined Wilson on October 28, 1998.  In his decision, the ALJ noted:

> Finally, I have not accepted the limitations outlined by the consultative examiner, S. Sengupta, M.D. (Exhibit 5F, at 4-5).  I have rejected these limitations, as it appears the examiner accepted at face value the claimant's subjective statements of her medical condition and limitations.  Dr. Sengupta did not review medical records to corroborate the presence of the impairments reported or confirm the claimant sought treatment for persistent problems for any physical condition.

Tr. 25.  The regulation concerning a consultative examination conducted at the Commissioner's expense states that the physician conducting the examination will be provided with "any necessary background information about your condition."  20 C.F.R. 416.917.  It is not clear from the ALJ's decision whether the agency failed to provide Wilson's medical records to Dr. Sengupta or

4

whether he merely failed to review the records. If the agency failed to provide Wilson's medical records to Dr. Sengupta, the ALJ cannot weigh this oversight against her. Dr. Sengupta's report did not state that he had reviewed Wilson's prior medical records. However, "the lack of an explicit reference to medical history, standing alone, does not render the report legally insufficient." *Wilson v. Chater*, No. 96-6358, 1997 WL 218486, at *3 (10th Cir. May 1, 1997).

Dr. Sengupta performed a physical examination and documented his findings. Dr. Sengupta found in pertinent part:

> Upper extremity: Range of motion in the shoulder, and elbow slightly diminished. Muscle strength and muscle power slightly diminished. Sensation and reflexes intact. She could extend her hands, she could make fist, and fingers could be opposed. Finger-nose test normal. Occasional fine tremor in the right hand.
>
> Examination in the lumbar area reveals slight tenderness with no muscle spasm. Flexion/extension limited to 80 degrees. Lateral bending 15 degrees on both sides. Big scar on her right thigh for open reduction and internal fixation of femur with slight muscle atrophy. Diminished range of motion in her hip joints, right knee joint, and left ankle joint. Muscle strength also diminished on the right leg and left ankle. Tenderness present on her right hip and right knee. Reflexes on the right knee and left ankle absent. Previous surgery on the left ankle. She could not walk on her toes, she could walk on heels and squat with difficulty. She could not stand on one leg, left or right. She has problems with her balance and coordination.
>
> Plantar flexor. Gait almost normal. She walks slowly. Occasionally she uses cane to give support on the right side. Peripheral pulsation diminished on both sides. No ankle edema noted.
>
> ASSESSMENT:
> Obesity, probable insulin resistance.
> Diabetes Type II, poorly controlled. Currently on Insulin, in addition to her hypoglycemic agents. Diabetic complications, peripheral neuropathy.
> Hypertension.
> Bronchial Asthma.
> Hiatal hernia with GERD.
> Hepatitis C.
> History of compound fracture femur following motor vehicle accident and repaired by internal fixation with plates and pins.
> Arthritis right knee joint and wrist joints.
> Chronic neck pain and low back pain following old injury in the cervical spine, & L. Spine.
> Depression.

Tr. 201.  Dr. Sengupta completed a Range of Motion Form and a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form.  Tr. 202-205.  In the Medical Source Statement of Ability to Do Work-Related Activities, Dr. Sengupta opined Wilson could lift and/or carry **one pound** occasionally (from very little up to 1/3 of an 8 hour day) and could lift and/or carry **one to two pounds frequently** (from 1/3 to 2/3 of an 8 hour day).  Tr. 202.  In support of this assessment, Dr. Sengupta noted "obesity and her old fracture rt femur with metallic plate & pins."  *Id.*  Dr. Sengupta also opined Wilson could stand **one to two hours** in an 8-hour work day and **two to three hours** with interruption.  In support of this assessment, Dr. Sengupta noted "obesity, old fx rt femur & rt knee, met (metallic) plate & pins in rt fem(femur)" and "diabetic neuropathy."  *Id.*  Dr. Sengupta further opined Wilson could sit **two hours** in an 8-hour work day and without interruption she could sit from **one half hour to one hour** due to her "diabetic neuropathy, arthritis rt knee jt (joint)" and due to her problem with her right femur.  Tr. 203.

Under the regulations, Dr. Sengupta is considered a "nontreating source."  *See* 20 C.F.R. §§ 404.1502 & 416.902.  A nontreating source means "a physician, psychologist, or other acceptable medical source who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship" with the claimant.  *Id.*  This term includes an acceptable medical source who is a consultative examiner for the agency, when the consultative examiner is not a claimant's treating source.  *Id.*  An ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who has not examined [claimant].  *See* 20 C.F.R. § 416.927(d)(1).  The ALJ "may not ignore these opinions and must explain the weight given to these opinions in [his] decisions."  *See* SSR 96-6p, 1996 WL 374180, at *1.  However, "the opinions of State agency medical and psychological consultants . . . can be given weight only

insofar as they are supported by evidence in the case record . . . ." *Id.* at *2. Additionally, an ALJ may not substitute his own opinion for a medical opinion. *See Sisco v. United States Dep't of Health & Human Serv*s., 10 F.3d 739, 744 (10th Cir. 1993).

In this case, the ALJ rejected Dr. Sengupta's medical report on the grounds that Dr. Sengupta "accepted at face value the claimant's subjective statements of her medical condition and limitations." Tr. 25. However, Dr. Sengupta supported his findings with objective medical evidence. Dr. Sengupta's examination revealed diminished "peripheral pulsation" in both feet, a complication of diabetes. Dr. Sengupta also documented Wilson's limited range of motion where applicable in the Range of Motion Form. Most importantly, Wilson's medical records support Dr. Sengupta's assessment that Wilson's diabetes was "poorly controlled."[1] *See e.g.*, Tr. 185 (fasting blood sugar level 196);Tr. 187 (fasting blood sugar level 210); Tr. 188 (fasting blood sugar level 213); Tr. 189 (fasting blood sugar level 227); *see also,* Tr. 535 (blood sugar levels from 172 to 317 during hospitalization), 539. Dr. J. Bearden, Wilson's treating physician, also noted she suffered from neuropathy. Tr. 562, *see also* Tr. 260 (Chronic Medication List- "Impramine 75 mg." at bedtime for "neuropathy."). Wilson's obesity also is well documented throughout her medical records. The medical record also indicates Wilson suffered from degenerative changes in the acromioclavicular joint of her left shoulder (Tr. 175) which would account for the diminished range of motion of her shoulder (Tr. 204); *see also* Tr. 176 (chronic synovitis, left ankle). Therefore, the ALJ erred in disregarding Dr. Sengupta's opinion on the grounds cited in his decision.

---

[1] The normal fasting plasma glucose levels in adults is less than 115 mg/dL. *The Merck Manual* 170 (17th ed. 1999).

In his decision, the ALJ also disregarded Wilson's diagnosis of hepatitis C. Specifically, the ALJ found:

> The claimant alleges she has been diagnosed to have hepatitis C; nonetheless, the evidence of record does not contain any report confirming this diagnosis. Indeed, all references to this condition are 'by history' (Exhibits 5F, 18F, at 4), indicating the presence of the condition was provided by the claimant when giving her medical history and not verified independently. She has informed Mr. Clements that she was diagnosed in November 1997 (Exhibit 15F, at 26); nonetheless, records of her primary treating sources, St. Francis Medical Center (Exhibit 4F, 22F) do not confirm the presence of this infection. The condition was not mentioned in her hospitalization in August 1999. If she had been infected with hepatitis C this condition would have been featured prominently in the records of her hospitalization (Exhibit 18F at 78-79 and 18F, at 2-3). Liver function studies have not been reported as significantly elevated (Exhibit 13F, at 14; 18F, at 83-84). Therefore, assuming the claimant has been infected with the virus, the applicable Listing section is that pertaining to chronic liver disease, § 5.05. To meet the requirements of this Listing section, the medical evidence of record must establish the presence of esophageal varices with a documented history of massive hemorrhage attributable to these varices or the performance of a shunt operation for esophageal varices. There is no evidence of this symptom.
>
> The other requirement of Listing 5.05 are not met or approached because bilirubin levels at no time have exceeded 2.5 mg per deciliter (see, e.g., Exhibit 18F, 22F) and in fact routinely are not elevated (Id.). There is no evidence of the presence of ascites (Exhibit 5F) and laboratory findings have not established the presence of persistent hypoalbuminemia of 3.0 grams per deciliter or less (Exhibit 18F, 22F).
>
> Finally, the remaining two criteria for Listing 5.05 are also not met because the claimant has never been diagnosed with hepatic encephalopathy, nor has any liver disease been confirmed by liver biopsy.

Tr. 21-22. The record indicates that on February 10, 1999, Dr. Bearden ordered a liver profile because Wilson reported she had Hepatitis C but was "awaiting insurance approval to undergo treatment." Tr. 563. On July 8, 1999, Dr. Bearden noted "Referral is in place to Dr. Chittajallu for hepatitis C." Tr. 557. On August 31, 1999, Dr. Maddox listed "Chronic Hepatitis C w/o Hepatic Coma" as one of the diagnoses. Tr. 305. On August 24, 1999, the day Wilson was admitted to Lea Regional Medical Center, the nurse noted "Diabetes– Hep C+." Tr. 321. On February 9, 1999, Dr. Frechen also noted "Hep C will be checked out . . . ." Tr. 284.

8

Wilson may not meet Listing 5.05, however, the ALJ erred in disregarding the diagnosis of Hepatitis C and should have sought clarification from her treating physician. Although chronic Hepatitis C may be asymptomatic, some patients do experience nonspecific malaise, anorexia, and fatigue which would impact Wilson's ability to engage in substantial gainful activity. *The Merck Manual* 385 (17th ed. 1999). On remand, the ALJ shall address this issue with Wilson's treating physician.

## B. Cocaine Dependence

Wilson contends the ALJ erred in finding that her cocaine dependence was a material contributing factor to her disability. In his decision, the ALJ found as follows:

> I have independently evaluated the claimant's cocaine dependence disorder under the applicable Listing, 12.09, regarding substance addiction disorders. It is apparent the claimant was cocaine dependent for much of the period adjudicated, March 1, 1998, through August 31, 1999. In February 1999, the claimant reported to her counselor, R. Clements that she had spent a couple of days in jail "for cocaine mid '98" (Exhibit 15F, at 19). She had been arrested again in February 1999 and charged with felony possession with intent to distribute cocaine (Exhibit 15F, at 6). In August 1999, the claimant was incarcerated in Carlsbad, New Mexico in connection with the cocaine related charges (Exhibit 18F, at 240-242). While incarcerated, the claimant refused to take her medications, eat or drink, resulting in confusion, lithium toxicity and lack of control of her diabetes. From August 19, 1999, through August 28, 1999, the claimant was hospitalized at Carlsbad Medical Center (Exhibit 18F, at 78-79) and Lea Regional Medical Center (Exhibit 18F, at 2-3) following her failure to eat, drink or take her medications as prescribed for her mental condition and diabetes resulting in delirium secondary to lithium intoxication. Her discharge diagnosis included bipolar disorder, cocaine dependence, personality disorder, obesity, and diabetes mellitus (Exhibit 18F, at 2-3). While hospitalized she told the nursing staff that they 'did not know how bad she wanted cocaine" (Exhibit 18F, at 28). She advised the nutritionist that she abuses cocaine and alcohol (Exhibit 18F, at 25). Attendance at Narcotics Anonymous meetings was included as part of the claimant's discharge treatment recommendations (Exhibit 18F, at 2-3; 18F, at 8-10). Following discharge from the hospital, the claimant resumed treatment with her counselor, R. Clements (Exhibit 24F). Despite the involvement of cocaine dependence in the claimant's diagnosis, Mr. Clements is apparently unaware of the claimant's dependence, as there is no reference to the fact he considered this problem in her overall level of functioning. Therefore, I have accepted Mr. Clement's opinions regarding the claimant's level of functioning described in 'exhibit 23F for the period March 1, 1998, through August 31, 1999; nonetheless, I have given controlling weight to the diagnosis of

>cocaine dependence offered by the physician caring for the claimant during her hospitalization, T.L. Maddox, M.D.  I have afforded controlling weight to this physician because he was able to observe the claimant in an in-patient setting for an extended period and he relied on the information developed by his staff during the claimant's hospitalization.  Thus the claimant's cocaine dependence satisfies the general description of a substance addiction disorder defined under Listing 12.09.

Tr. 15-16.  The ALJ relied on Dr. Maddox' diagnosis of cocaine dependence to find Wilson met Listing 12.09 of the Listing of Impairments from her onset date, March 1, 1998 through August 31, 1999.  Tr. 15.  The ALJ further found that after Wilson's cocaine dependence ceased on August 31, 1999, her mental impairments became non-severe.  Tr. 15-19.  However, on August 26, 1999, Dr. Maddox met with Wilson for an individual session, discussed discharge plans, and noted "Her judgment, in my opinion, is impaired and she suffers from a severe personality disorder."  Tr. 313.  At this time, Wilson was not abusing alcohol or cocaine.

The ALJ also concluded Mr. Clements was unaware of Wilson's cocaine dependence.  Based on this conclusion, the ALJ gave controlling weight to Dr. Maddox' opinion.  The ALJ accepted Mr. Clements' assessment of Wilson's mental impairments but only for the period of March 1, 1998 through August 31, 1999.  The ALJ then found Wilson's drug and alcohol abuse was a contributing factor material to the finding of disability.[2]

A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments.  *Castellano v. Secretary of Health and Human Servs.*, 26

---

[2] In 1996, Congress amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b)(1) & 416.935(b)(1).

F.3d 1027, 1029 (10th Cir. 1994). The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Unless good cause is shown to the contrary, the Commissioner must give substantial weight to the testimony of the claimant's treating physician. If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

On March 9, 2000, Rob Clements, L.P.C.C., Wilson's therapist since 1989, submitted a Mental Impairment Questionnaire. Mr. Clements stated Wilson "has a diagnoses of a major affective disorder (Bipolar) and borderline personality disorder" and "experiences problems with insight and judgment, mood and affect." Tr. 567. Mr. Clements opined that these areas impacted "dramatically her ability to function daily." *Id.* Mr. Clements further opined that due to "both diagnoses [Wilson's] ability to interact with peers, co-workers, supervisors and customers would be severely impaired." Tr. 568. Mr. Clements completed a functional limitation form and indicated Wilson was slightly restricted in activities of daily living, markedly limited in her ability to maintain social functioning, often experienced deficiencies of concentration, persistence or pace, and had repeated (three or more) episodes of deterioration or decompensation in work or work-like settings. Tr. 569. As to Wilson's prognosis, Mr. Clements opined that her "bipolar disorder [was] an ongoing problem that may have partial remission although it [was] complicated by [her] hepatitis which may impact her ability to take medication." Tr. 568. In a Medical

Report, Dr. Frechen, a clinical psychiatrist, informed the agency that Wilson's psychiatric treatment was managed by him and Mr. Clements, and he concurred with the evaluations performed by the therapists regarding Wilson. Tr. 267. Dr. Frechen and Mr. Clements are considered treating sources.

On January 11, 1999, Wilson had a one hour therapy session with Mr. Clements. Tr. 273. Mr. Clements noted Wilson "continues to exhibit extreme anger and agitation as part of her borderline personality disorder." *Id.* On February 19, 1999, after a therapy session, Mr. Clements noted, "[Wilson] states that she has been arrested since her last visit and charged with felony possession with intent to distribute in reference to cocaine . . . ." Tr. 271. Apparently, Mr. Clements was aware of Wilson's drug problems. On May 1, 2000, Mr. Clements opined:

> Ms. Wilson suffers from two mental health problems that exacerbate one another. The Affective Disorder (Axis I Diagnosis) is a problem that can primarily be controlled with medication. However, her Axis II diagnosis, Borderline Personality Disorder, is a problem that cannot be controlled primarily with medication. These characterological traits increase problems in judgment, insight, coping with daily situations (dealing with others), and impulsivity in particular. This quite often leads to behaviors such as drug use and other self-mutilating kinds of behaviors that certainly will exacerbate the Affective Disorder.
>
> * * * * * * * * *
>
> It is this therapist's opinion that Ms. Wilson was, indeed, experiencing severe mental anguish beginning in March 1998. At that point in time her impulsivity and characterological problems certainly exacerbated her Axis I diagnosis. The onset of Hepatitis C caused problems in being able to cope with either and/or both her mood disorder and personality disorder. At that time, Ms. Wilson was unable, in this therapist's opinion, to provide for herself financially due to the fact that she could not maintain any type of working relationship with supervisor, peers or the public.

Tr. 590. Dr. Frechen and Mr. Clements have treated Wilson since 1989. Their opinions are entitled to controlling weight and are not inconsistent with Dr. Maddox' opinion that Wilson "is impaired and she suffers from a severe personality disorder." Tr. 313.

12

The ALJ failed to set forth legitimate reasons for disregarding Mr. Clement's opinion regarding Wilson's mental impairments and her limitations outside the time frame of March 1, 1998 through August 31, 1999.  In addition, the ALJ's findings that Wilson's cocaine dependence met Listing 12.09 and that her mental impairments became non-severe after August 31, 1999, are not supported by substantial evidence.  The Court will remand this case to allow the ALJ to further develop the record and determine whether Wilson has been diagnosed with Hepatitis C, since Mr. Clements contends this condition may impact her ability to take her medication for control of her Bipolar Disorder.

**Conclusion**

The ALJ's explanation for the weight he gave Dr. Sengupta's opinion is not supported by the record.  On remand, the ALJ should reconsider Dr. Sengupta's October 28, 1998 Medical Report and explain the weight given to Dr. Sengupta's opinion.  The ALJ also may request that Wilson's treating physician complete an RFC (physical) form if necessary.  The ALJ also erred in discounting Wilson's Hepatitis C diagnosis.  On remand, the ALJ should consult with Wilson's treating physician and clarify whether Wilson has been diagnosed with this condition. Finally, the ALJ should reconsider Mr. Clements' opinion regarding Wilson's mental impairments.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**